IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 08-cr-00059-JLK

UNITED STATES OF AMERICA,
        Plaintiff,

v.

1. SCOTT A. WHATCOTT,
        Defendant

---

## COURT ADVISEMENT ON STATUS OF COUNSEL
## AND ORDER ON MOTION FOR CONTINUANCE

---

Kane, J.,

I. The defendant in this case is named as the sole defendant in a 21 Count indictment. Counts 1-7 each charge the defendant with bank fraud. The penalty for a violation of the bank fraud statute is up to 30 years imprisonment, a fine of up to $1,000,000.00, a term of supervised release not to exceed 5 years and a $100 special assessment.
Counts 8 and 9 each charge the defendant with Aggravated Identity Theft, the penalty for which is 2 years imprisonment, which must run consecutive to the predicate felony, but multiple convictions of the same statute may run concurrently with one another, a fine of up to $250,000.00, a term of one year supervised release and a $100 special assessment.
Counts 10-14 each charge the defendant with False Entries to Bank Records, with an attendant penalty for each of up to 30 years imprisonment, a fine of up to $1,000,000.00, a term of up to 5 years supervised release, and a $100 special assessment.
Counts 15-20 each charge the defendant with Unlawful Access to a Protected Computer to Defraud, the penalty for which is up to 5 years imprisonment, a fine of up to $250,000.00, a term of supervised release of up to 3 years, and a $100 special assessment per count.
Count 21 is a forfeiture count the prosecution of which has been deferred pending resolution of the foregoing 20 counts.

II. While it is entirely speculative at this point, and assuming the Defendant were to be convicted, the court's Probation Office estimates a Guideline imprisonment range of 53 to 63 months plus an additional 24 months for the Aggravated Identity Theft charges in Counts 8 and 9 for a total Guideline range of 75 to 87 months. It is to be noted that the Sentencing Guidelines are advisory only and any sentences imposed could fall within the Guideline range or above or below that range depending on the criteria set forth in 18 U.S.C. Section 3553 (a). Those criteria, however, cannot be predicted at this time. For example, the facts to be adduced at trial are not presently known. Moreover, the background and character of the Defendant are not presently

1

known. In that respect the Probation Office reports that the Defendant claims to have been awarded a Juris Doctor degree from Georgetown University Law School in 2001, but the Defendant's educational records at that institution were sealed at the Defendant's request and his academic history cannot presently be confirmed.

III. One of the matters to be considered this morning is the entry of appearance of court-appointed counsel for the Defendant. Four attorneys have already been appointed and have been permitted to withdraw on motions based upon several representations including the Defendant's failure or refusal to cooperate or communicate with counsel, the Defendant's accusations that at least one of the appointed counsel was incompetent, and threats by the Defendant to another counsel or a member of his staff. Mr. Mark Johnson has been appointed as the fifth attorney to represent the Defendant and the Defendant is hereby advised that Mr. Johnson will be the last attorney this court will appoint.

Should the Defendant act in a manner that prompts Mr. Johnson to move to withdraw, I will deem that by his conduct the Defendant has waived his right to counsel. He will then have to proceed to defend himself. In such event, I will appoint Mr. Johnson as advisory counsel and not as standby counsel. As advisory counsel, Mr. Johnson would act as the Defendant's consultant only, and not as his attorney. In that event, the Defendant may turn to him for information and advice on courtroom procedure, evidentiary rules, jury instructions, technical matters such as subpoenas and subpoenas duces tecum, but Mr. Johnson would not be considered by the Defendant or anyone else to be the Defendant's "associate" to whom projects are given, nor would Mr. Johnson be required or expected to conduct legal research, fact investigation, or law clerk activities nor would he be expected to advise the Defendant on matters of tactics or strategy nor assist him in preparing legal arguments or voir dire questions or jury challenges or arguments to the jury.

If it becomes necessary for Mr. Johnson to withdraw and for me to appoint him as advisory counsel, Mr. Johnson would have no control or responsibility for the defense whatsoever, nor would he assume any such function nor advance any position other than to advise within the permissible scope described above and he would do so irrespective of any disagreement he might have with the wisdom or persuasive potential of the Defendant's position. Specifically, he would have no other or additional duties such as making evidentiary objections or filing or preparing motions.

Finally, in this respect, should it become necessary to appoint Mr. Johnson as advisory counsel, I will order suspension of ECF filings and require that all filings by both the government and the Defendant be on paper and served separately on the court, the opposing party and the advisory counsel. No pleadings would be accepted that are filed by another person on behalf of either the Defendant or the government.

IV. The Defendant is hereby advised that proceeding to defend himself, in other words appearing *pro se*, carries with it grave and substantial risks. While it is reported to the court that the

Defendant has been awarded a law degree, I have seen no evidence that he can proceed competently to defend himself without the appointment of advisory counsel. With such advisory counsel, I find that he could represent himself. Nevertheless, some of the major risks attendant upon *pro se* representation would be as follows:

A. The charges contained in the indictment are numerous, and carry grave, substantial penalties. The proofs for bank fraud, aggravated identity theft, false entries to bank records and unlawful access to a protected computer to defraud are usually complicated and prolix. Indeed, if expert testimony is presented, an entire panoply of additional difficulties including the methodology used by the expert will ensue. Moreover, specific intent evidence further complicates the evidentiary issues at trial.

B. As previously described the penalties of up to 30 years and mandatory consecutive sentences for some of the counts are allowable.

C. A case of bank fraud, computer fraud, identity theft and false entries to bank records necessarily involves defenses other than mere denial. Failure of proof is always present. Possibly, some of the alleged acts may be justified. The Defendant has already stated in open court that not he, but his wife committed the acts or some of the acts charged.

D. Presenting a case involving banking, computers and security programs to a jury of twelve people probably untutored in the subject areas increases the difficulty of both prosecution and defense. Cross-examination of witnesses is difficult enough for even the most highly experienced trial lawyers. To embark on cross-examination, especially of experts and highly experienced law enforcement officers, without that experience should be regarded as a fool's errand.

E. Finally, in this respect, self-representation does not excuse a party from complying with the Rules of Evidence and the Rules of Criminal Procedure. The difficulty of acting as both a party and a counsel is awkward at best, usually clumsy and frequently unpersuasive.

To repeat, this listing should be considered as an admonition of the difficulties the Defendant will confront should he either expressly, or impliedly by his conduct, waive his right to representation. Mr. Whatcott, you are so advised and I want to make certain that you understand the basis on which we are to proceed from here on. I sincerely hope that you and Mr. Johnson get along and that what I have said might happen will not be necessary.

V. In terms of what rights the Defendant has in dealing with Mr. Johnson there are three decisions that must be made personally by him. (1) whether to plead guilty or not guilty; (2) whether to demand or waive a jury trial; and (3) whether to testify. There is also some case law, though not by the Tenth Circuit as of this date, that in some circumstances the waiver of the right to a speedy trial might be added to this list. The circumstance would not be the waiver of the statutory right, but would be beyond the statute to a waiver of the constitutional right to a speedy trial. The rationale is that each of these decisions involves the surrender or assertion of basic constitutional rights with the result that the defendant's personal consent to waiver must be clearly established.

3

In all other respects the decisions to be made in the conduct of a defense belong to counsel. In *Jones v. Barnes*, 463 U.S. 745 at 751 (1983), the Supreme Court observes that an indigent defendant does **not** have a constitutional right "to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." With greater reason, counsel is never obligated to press points requested by the client, if counsel, as a matter of professional judgment, considers them to be frivolous. It is counsel, and not the client, who has the authority to make strategic decisions.

Under both Tenth Circuit authority and the Colorado Rules of Professional Conduct as adopted by this court, appointed counsel is obligated to inform and consult with the defendant regarding strategic decisions, but not to obtain the defendant's consent. In sum, it is the lawyer's duty to inform and consult with the client, but also the lawyer's responsibility to decide these matters and for which the lawyer will be held responsible.

With respect to tactical matters, where decisions frequently must be made in the moment, there is no duty to inform and consult. Tactical decisions include questions asked of witnesses on both direct and cross-examination and comments made in opening and rebuttal arguments, evidentiary objections or withholding of valid objections and motions made during trial..


VI. The second purpose of this status conference is to give Mr. Johnson an opportunity to request any changes to the current pretrial and trial schedule. By the most recent order, any pretrial motions were due on November 7, two days after I granted the request of defense counsel Castle and Mulligan to withdraw and three days before Mr. Johnson was appointed. Other current case deadlines are:

1. Proposed jury instructions due            December 29, 2008
2. Final Trial Preparation Conference        January 20, 2009
3. Start of five day jury trial                  February 2, 2009

By my reckoning the Speedy Trial deadline presently is February 3, 2009, the day following the currently scheduled start of trial. Mr. Johnson has moved to continue these deadlines and the trial date. He seeks a new ends-of-justice continuance. I have previously granted two ends-of-justice continuances, the first on March 12, 2008 for 180 days and the second on September 9, 2008 for an additional 90 days. Mr. Whatcott was indicted on January 31, 2008 and made his initial appearance before the Magistrate Judge on February 14, 2008. He is on bond. Th present ends-of-justice continuance is necessary based on the recent appointment of Mr. Johnson and the need he has to investigate and prepare for trial. The same degrees of complexity found to justify the previous two motions continue and the same reason to allow counsel necessary time to investigate and prepare for trial still exist. The only difference is that a new attorney must begin anew. Therefore, the motion for continuance is granted to promote the ends of justice. No further such motions will be entertained absent a showing of compelling need.

4

The previous deadlines are vacated. Any motions must be filed by January 5, 2009. We will set new dates for filing proposed jury instructions, the final trial preparation conference and the start of the jury trial following the filing of the motions, if any. If no further motions are filed, those dates will be set on January 6, 2009.


Dated this 21st Day of November, 2008

*John C. Kane*

John L. Kane
United States Senior District Judge